IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

D & M SALES, INC.                  :       CIVIL ACTION
                                   :
        v.                         :
                                   :
LORILLARD TOBACCO CO.              :       NO. 09-2644

**MEMORANDUM**

Padova, J.                                              March 8, 2010

Plaintiff D & M Sales, Inc. ("D & M") filed the instant action against Lorillard Tobacco Co. ("Lorillard"), alleging breach of contract arising out of Defendant's termination of Plaintiff's status as an authorized Direct Account supplier and Wholesale Delivery Program supplier. Presently before the Court is Defendant's Motion to Dismiss the Complaint. We heard oral argument on the Motion on February 9, 2010. For the following reasons, we grant the Motion.

**I.     BACKGROUND**

The facts as set forth in the Complaint and its attachment are as follows. Until March 25, 2008, Plaintiff was an authorized Direct Account supplier and Wholesale Delivery Program supplier for Defendant and sold and distributed Defendant's cigarettes. (Compl. ¶¶ 6-7.) The relationship between Plaintiff and Defendant was governed by the Lorillard Tobacco Company – Excel Wholesale Program Description (the "Agreement," attached as Ex. A to the Complaint), which described the terms of the Wholesale Delivery Program (the "Program"). (Id. ¶¶ 7-8.) The Program "is available to all Wholesalers that purchase [Defendant's] products on a direct basis and agree on behalf of its participating branches to implement this program." (Id. ¶ 8 (quoting Ex. A).) After Defendant invited Plaintiff to join the Program, Plaintiff assented to the Agreement, purchased Defendant's products on a regular basis, and agreed to implement the Program. (Id. ¶ 9.) The

1

parties' agreement is embodied in the Excel Enrollment Form (the "Enrollment Form"), which Defendant has attached to its Motion to Dismiss.[1] (Mot. to Dismiss Ex. A.)

The Agreement provides that Defendant may terminate or discipline its suppliers under certain circumstances, including if a supplier violates any of the requirements stated at Section I.A of the Agreement. (Id. ¶¶ 12, 13(A)). Among those requirements are that the suppliers (1) maintain age verification procedures and not sell cigarettes or other tobacco products to anyone not meeting the age verification requirements; (2) not use Defendant's trademarks, brand names, or intellectual property without Defendant's authorization; (3) maintain Direct Account status throughout the entire program period; (4) maintain participation in one or more level(s) for the entire payment period; (5) not purchase or trade Defendant's discounted product with other wholesalers or retail stores; (6) not directly or indirectly purchase, sell, distribute, or possess any products with Defendant's brand name that were not manufactured by Defendant; (7) comply with local, state, and federal laws governing the sale of Defendant's products as well as all elements of a Master Settlement Agreement; (8) permit Defendant's inspection and inventory count of its products; and (9) not have any past due invoices from Defendant. (Id. Ex. A at LOR-1.) The Agreement further specifies that suppliers who provided inaccurate, false, or misleading data may jeopardize their Direct Account status. (Id. Ex. A at LOR-3.) Finally, the Agreement specifies that Defendant reserves final discretion to resolve issues arising from the Program. (Id. Ex. A at LOR-4.)

---

[1] Since the Enrollment Form is an integral part of the Agreement in that it sets forth the parties' acknowledgement of the Agreement's terms, and since the Agreement is central to the case, we may consider it in ruling on the Motion to Dismiss. See Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am., 405 F. Supp. 370, 374 n.1 (M.D. Pa. 1975); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure (hereinafter "Wright & Miller") § 1327 (3d ed. 2004).

On March 25, 2008, Defendant faxed to Plaintiff a memorandum terminating Plaintiff as an authorized Direct Account supplier and Program supplier without explanation. (Id. ¶¶ 11-12; Termination Memorandum, attached as Ex. B to the Complaint.) According to the Complaint, Plaintiff did not commit any of the acts specified in the Agreement as giving rise to potential termination of Plaintiff's rights under the Agreement. (Compl. ¶ 14.) As a result of Defendant's termination of Plaintiff's rights, Plaintiff has suffered, and will continue to suffer, lost sales. (Id. ¶¶ 17-18.)

Plaintiff's Complaint asserts a cause of action against Defendant for breach of contract, alleging that Defendant had a duty to perform under the terms of the Agreement and breached this duty by improperly terminating Plaintiff's rights as a supplier. (Id. ¶ 16.) Plaintiff seeks damages in excess of $2 million and an order reinstating it as an authorized supplier and Wholesale Delivery Program supplier. On September 9, 2009, Defendant filed its Motion to Dismiss.

## II. LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). In the end, we will grant a Rule 12(b)(6) motion if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing Wright & Miller, supra, at § 1216). A complaint that offers "only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" or that merely "allege[s] the plaintiff's entitlement to relief," is insufficient. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting Twombly, 550 U.S. at 555). Rather, a complaint must show the plaintiff's entitlement to relief with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).

### III. DISCUSSION

Defendant argues that the Complaint must be dismissed because it fails to state a claim for breach of contract upon which relief may be granted. Specifically, Defendant argues, inter alia, that the Agreement attached to the Complaint is unambiguously a contract of indefinite duration, which was terminable at will as a matter of law. Accordingly, it maintains that Plaintiff cannot plausibly allege that Defendant breached the Agreement by terminating Plaintiff's rights under the

4

Agreement.[2]

In order to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms, (2) a breach of duty imposed by the contract and (3) resultant damages." CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999) (citing Gen. State Auth. v. Coleman Cable & Wire Co., 365 A.2d 1347, 1349 (Pa. Commw. Ct. 1976)). In interpreting a contract, the court's goal is "to ascertain and give effect to the intent of the contracting parties." Crawford Cent. Sch. Dist. v. Commonwealth, 888 A.2d 616, 623 (Pa. 2005) (citation omitted). When the words of an agreement are clear and unambiguous, the court will ascertain the intent of the parties from the language used in the agreement. LJL Transp., Inc. v. Pilot Air Freight Corp., 962 A.2d 639, 647 (Pa. 2009) (citing Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982)).

Here, the Agreement at issue is a distribution agreement; as such, it is governed by the Pennsylvania Uniform Commercial Code ("UCC").[3] See Artman v. Int'l Harvester Co., 355 F. Supp. 482, 486 (W.D. Pa. 1973) (citing Weilersbacher v. Pittsburgh Brewing Co., 218 A.2d 806 (Pa. 1966); and Mastrian v. William Friehofer Baking Co., 45 Pa. D. & C.2d 237 (Luzerne C.C.P. 1968)). Under Section 2-309(b) of Pennsylvania's Commercial Code, when a contract for sale "provides for successive performances but is indefinite in duration it is valid for a reasonable time but unless otherwise agreed may be terminated at any time by either party." 13 Pa. Cons. Stat. Ann. § 2309(b).

---

[2]Plaintiff also argues that the Agreement was terminable at will by the terms of its express language. However, we need not reach this argument in light of our conclusion that the Rule 12(b)(6) Motion should be granted because the Agreement was unambiguously a contract of indefinite duration.

[3]Plaintiff conceded in its supplemental briefing following oral argument that the UCC applies to the Agreement.

This principle is consistent with Pennsylvania case law, which disfavors contracts of perpetual duration.[4]  See Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 n.5 (Pa. 1986).

We consider an agreement's performance conditions in determining if the agreement is indefinite in duration.  Where an agreement specifies the sole or exclusive conditions that will give rise to termination, it is definite in duration and therefore not terminable at will as a matter of law.  In contrast, where an agreement merely specifies conditions that *may* result in termination of the agreement, it is indefinite in duration and terminable at will.  Thus, in Bachman Co. v. Anthony Pinho, Inc., Civ. A. No. 91-5679, 1993 WL 64620 (E.D. Pa. Mar. 3, 1993), the court found that a contract providing both that the grant of distribution rights would continue "until terminated as provided herein," and that the distribution rights could "be exercised only pursuant to the terms of this agreement," was a contract of limited and not indefinite duration.  Id. at *6.  In contrast, in Delta Services & Equipment, Inc. v. Ryko Manufacturing Co., the court found that language authorizing termination in the event of failure to meet a minimum sales volume requirement provided only "limited grounds for immediate termination" without excluding other grounds for termination, and therefore was not "unequivocal language" necessary to transform the contract into one of definite duration.  908 F.2d at 12.

---

[4]As the United States Court of Appeals for the Fifth Circuit has stated,
> [S]trong policy reasons support the presumption in favor of interpreting the contract as one of indefinite term.  First, common sense tells us that parties ordinarily do not intend to maintain their business relationships forever.  Second, one of the important goals of the UCC – to promote mutually beneficial business dealings – is not fostered if the parties are required to remain in the business relationship after it has soured.

Delta Servs. & Equip., Inc. v. Ryko Mfg. Co., 908 F.2d 7, 12 (5th Cir. 1990) (citing Corenswet, Inc. v. Amana Refrigeration, Inc., 594 F.2d 129, 138 (5th Cir. 1979)).

In this case, it is undisputed that the Agreement does not expressly affirm or deny that it is terminable at will. Plaintiff argues that the Agreement is not terminable at will because it specifies conditions that determine the duration of the relationship, insofar as it contains specific conditions of performance and provides that Plaintiff may be removed from the Program and lose its Direct Account status if it fails to satisfy those conditions. However, we find the Agreement to be more similar to that in <u>Delta Services</u> than that in <u>Bachman</u>. Although it provides that wholesalers must meet the Program's requirements and procedures in order to qualify for the Program, and sets forth certain grounds for termination of a wholesaler's rights, it does not state that those grounds are the *only* possible grounds for termination. Additionally, the Agreement does not specifically state that a participant will remain in the Program only so long as it continues to satisfy the Program requirements. Thus, under the guiding case law, the Agreement, by its terms, can only be interpreted as permitting termination on grounds other than those specified in the Agreement. It simply does not suggest an intent to make the Agreement terminable only upon the occurrence of the expressly enumerated conditions. Accordingly, even viewing the facts in the light most favorable to Plaintiff, we hold that the Agreement is unambiguously of indefinite duration. The Agreement was therefore terminable at will, and Plaintiff cannot plausibly allege that Defendant breached the Agreement by terminating Plaintiff as a supplier. We consequently grant the Motion to Dismiss for failure to state a claim upon which relief can be granted.

When dismissing a complaint for failure to state a claim upon which relief may be granted, the court must grant the plaintiff leave to amend the complaint "unless amendment would be inequitable or futile." <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116 (3d Cir. 2000). In this case, as Plaintiff cannot state a claim in light

of the controlling contractual terms, we find that any amendment would be futile. Consequently, we dismiss the Complaint with prejudice and without leave to amend.

**IV. CONCLUSION**

For the foregoing reasons, we grant the Motion to Dismiss and enter judgment in Defendant's favor. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova
John R. Padova, J.